IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TECHNOPROBE S.P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 24-650-JCG |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| FORMFACTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FORMFACTOR, INC.'S ANSWER TO**
**COMPLAINT AND COUNTERCLAIMS**

Defendant FormFactor, Inc ("FormFactor") hereby answers the allegations in the Complaint For Patent Infringement ("Complaint") (Dkt. 1) filed by Plaintiff Technoprobe S.P.A. ("Technoprobe").

FormFactor denies all allegations not expressly admitted herein. Allegations may be denied because FormFactor is without knowledge or information sufficient to form a belief as to their truth, even if not expressly stated. The numbered paragraphs in this Answer correspond to the numbered paragraphs of the Complaint.

The headings in the Complaint are restated below solely for ease of reference, and no admission or other meaning is thereby conveyed. FormFactor denies any and all factual allegations in the headings as well as all allegations in unnumbered paragraph of the Complaint. FormFactor reserves all rights to amend its Answer in accordance with the Federal Rules of Civil Procedures and the Orders of the Court.

## I.     NATURE AND SUMMARY OF THE ACTION

1.     The allegations in paragraph 1 state a legal conclusion to which no response is required.  To the extent a response is nonetheless deemed to be required, FormFactor admits that

Technoprobe purports to bring this action for patent infringement of U.S. Patent No. 11,921,133 under 35 U.S.C. § 271. FormFactor denies all remaining allegations in paragraph 1.

2.      FormFactor lacks information and belief sufficient to form a belief as to the truth of the allegations regarding Technoprobe's presentation at SWTest 2023 conference, on that basis, denies them. FormFactor denies all remaining allegations in paragraph 2.

3.      FormFactor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and on that basis, denies them.

4.      FormFactor admits that it designs, manufactures, markets, promotes, offers for sale, sells, or imports probe cards for testing certain semiconductor chips that the Complaint defines as "Accused Products." FormFactor denies all remaining allegations in paragraph 4.

5.      FormFactor admits that Technoprobe has attached what appears to be the '133 Patent to the Complaint as Exhibit A, and that Technoprobe is listed at the assignee on the face of the '133 Patent. FormFactor denies all remaining allegations in paragraph 5.

## II.      PARTIES

6.      FormFactor lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph 6, and on that basis, denies them.

7.      FormFactor admits that it is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 7005 Southfront Road, Livermore, CA 94551.

8.      FormFactor admits that it manufactures, markets, promotes, and sells certain probe card products in the United States, but denies that it manufactures probe cards in the State of Delaware. FormFactor denies all remaining allegations in paragraph 8.

## III.      JURSDICTION AND VENUE

9.      The allegations in paragraph 9 state a legal conclusion to which no response is

required. To the extent a response is nonetheless deemed to be required, FormFactor does not contest that the Court has subject matter jurisdiction over the claims in the Complaint.

10.     The allegations in paragraph 10 state a legal conclusion to which no response is required. To the extent a response is nonetheless deemed to be required, FormFactor does not contest personal jurisdiction for purposes of this Action only.

11.     The allegations in paragraph 11 state a legal conclusion to which no response is required.  To the extent a response is nonetheless deemed to be required, FormFactor does not contest personal jurisdiction for purposes of this Action only. To the extent a response is deemed to be required, FormFactor denies the remaining allegations in this paragraph.

12.     The allegations in paragraph 12 state a legal conclusion to which no response is required. To the extent a response is nonetheless deemed to be required, FormFactor does not contest venue for purposes of this Action only.

## IV.     BACKGROUND

### A.     Technoprobe's Products

13.     FormFactor lacks information sufficient to form a belief as to the truth of the allegations in this paragraph 13 and therefore denies them.

14.     FormFactor lacks information sufficient to form a belief as to the truth of the allegations in paragraph 14 and therefore denies them.

15.     FormFactor lacks information sufficient to form a belief as to the truth of the allegations in paragraph 15 and therefore denies them.

16.     FormFactor lacks information sufficient to form a belief as to the truth of the allegations in paragraph 16 and therefore denies them.

17.     FormFactor lacks information sufficient to form a belief as to the truth of the allegations in paragraph 17 and therefore denies them.

18.     FormFactor lacks information sufficient to form a belief as to the truth of the allegations in paragraph 18 and therefore denies them.

19.     FormFactor admits that Technoprobe has attached what appears to be the '133 Patent to the Complaint as Exhibit A, and that Technoprobe is listed at the assignee on the face of the '133 Patent. FormFactor lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19 and therefore denies them.

20.     FormFactor admits that paragraph 20 appears to show Figure 2C of the '133 patent. FormFactor lacks information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

### B.     FormFactor's Products

21.     FormFactor admits that its products include probe cards sold under the product names "Apollo," and "Kepler." FormFactor admits that its products include Kepler™ Vertical MEMS Probe Cards. FormFactor denies all remaining allegations in paragraph 21.

22.     FormFactor admits that the image included in paragraph 22 was included in one of FormFactor's presentations at SWTest 2023. FormFactor denies all remaining allegations in Paragraph 22.

### C.  FormFactor's Promotion of Infringing Probe Cards at SWTest 2023[1]

23.     FormFactor admits that SWTest 2023 is also known as The Semiconductor Wafer Test Conference and was held from Jun 5-7, 2023 at the Omni La Costa in Carlsbad, California. FormFactor admits that members from the probe card industry attended SWTest 2023 but lacks information sufficient to form a belief as to the truth of the remaining allegations in the second sentence in paragraph 23, and therefore denies them. FormFactor further admits that it presented

---

[1] FormFactor reiterates that headings in the Complaint are restated herein solely for ease of reference. FormFactor denies any factual allegations in the headings.

at SWTest 2023 Technical Sessions regarding its technology. FormFactor lacks information sufficient to form a belief as to the truth of the remaining allegations in paragraph 23 and therefore denies them.

24.     FormFactor lacks information sufficient to form a belief as to the truth of the allegations in paragraph 24 and therefore denies them.

25.     FormFactor lacks information sufficient to form a belief as to the truth of the allegations in the first and second sentences of paragraph 25 and therefore denies them. The third sentence of paragraph 25 states a legal conclusion to which no response is required. FormFactor denies the remaining allegations of paragraph 25.

26.     FormFactor admits that Cameron Hacker is currently listed as FormFactor's contact on the SWTest 2023 website for the "EXPO" portion of SWTest website (https://www.swtest.org/expo/). FormFactor denies the remaining allegations of paragraph 26.

27.     FormFactor admits that the image included in paragraph 27 was included in one of FormFactor's presentations during the SWTest 2023 Technical Sessions, given by David Raschko and Hadi Najar. FormFactor further admits that this presentation discussed "Metallized Guide Plate" technology, or "MeGP," among several other technologies. FormFactor denies all remaining allegations in paragraph 27.

28.     FormFactor admits that the image included in paragraph 28 was included in one of FormFactor's presentations during the SWTest 2023 Technical Sessions. FormFactor denies all remaining allegations in paragraph 28.

29.     FormFactor lacks information sufficient to form a belief as to the truth of the allegations in paragraph 29 and therefore denies them.

**D. FormFactor's Promotion of Infringing Probe Cards in Its Customer-Facing Website**

30.     FormFactor admits that its presentations from the SWTest 2023 Technical Session are available on the website identified in paragraph 30. FormFactor denies all remaining allegations in paragraph 30.

31.     FormFactor admits that the quoted text contained in paragraph 31 is excerpted from slides from one of its SWTest 2023 presentations. FormFactor denies all remaining allegations in paragraph 31.

32.     FormFactor admits that the portions of its website identified in the Complaint are publicly available. FormFactor admits that the quoted text in paragraph 32 has been excerpted from the FormFactor website. FormFactor denies all remaining allegations in paragraph 32.

33.     FormFactor admits that it does not restrict access on its website to the webpage recited in paragraph 33. FormFactor denies all remaining allegations in paragraph 33.

34.     FormFactor lacks sufficient information to form a belief as to the truth of the contents of third-party websites and therefore denies the allegations contained in paragraph 34. FormFactor denies all remaining allegations in paragraph 34.

**E. U.S. Patent No. 11,921,133**

35.     The allegations in paragraph 35 state a legal conclusion to which no response is required. To the extent a response is deemed to be required, FormFactor admits that the United States Patent and Trademark Office ("USPTO") issued the '133 patent on March 5, 2024, that said patent is titled "Testing Head Having Improved Frequency Properties," and that a copy of what appears to be the '133 patent is attached as Exhibit A to the Complaint. FormFactor lacks sufficient knowledge or information to form a belief for all remaining allegations in paragraph 35, and therefore denies them.

36.     FormFactor lacks information sufficient to form a belief as to the truth of the allegations in paragraph 36 and therefore denies them.

37.     FormFactor admits that paragraph 37 reprints claim 1 of the '133 patent. The remaining allegations in paragraph 37 state a legal conclusion to which no response is required. To the extent a response is required, FormFactor denies the remaining allegations in paragraph 37.

38.     FormFactor admits that paragraph 38 reprints Fig. 2A and the quoted language from the '133 patent. The remaining allegations in paragraph 38 state a legal conclusion to which no response is required. To the extent a response is required, FormFactor denies the remaining allegations in paragraph 38.

39.     Denied.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 11,921,133

40.     FormFactor restates and incorporates herein by reference its responses to the foregoing Paragraphs as though set forth herein.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Denied.

63.     FormFactor admits that Technoprobe and FormFactor were parties to litigation commenced on July 17, 2018 captioned *Feinmetall GmbH and Technoprobe S.p.A. v. FormFactor, Inc.*, Civil Action No. 1:18-cv-01057-RGA in the District of Delaware, in which it was asserted that FormFactor infringed U.S. Patent No. 7,850,460. FormFactor admits that Technoprobe sued FormFactor on August 4, 2023, alleging infringement of U.S. Patent No. 11,035,885, in a lawsuit captioned *Technoprobe S.p.A. v. FormFactor, Inc.*, Civil Action No. 1:23-cv-0842-JCG in the District of Delaware, and that lawsuit continues as of the date of this Answer. To the extent there are any remaining allegations in paragraph 63, FormFactor denies those allegations.

64.     FormFactor admits that, on the face of the patent documents, U.S. Patent Application No. 18/329,475 issued as the '133 patent and claims priority to U.S. Patent Application No. 16/442,385 which issued as the '885 patent. FormFactor admits that, on its face,

U.S. Patent Publication No. 2023/0333142 A1 published on October 19, 2023. FormFactor lacks information sufficient to form a belief as to the truth of the allegations in the last sentence of paragraph 64, and therefore denies them. FormFactor denies all remaining allegations of paragraph 64.

65.     FormFactor admits that, on its face, U.S. Patent Publication No. 2023/0333142 A1 published on October 19, 2023. FormFactor admits that FormFactor was a named defendant in the Civil Action No. 23-842-JCG action for infringement of the '885 patent on October 19, 2023. FormFactor denies all remaining allegations of paragraph 65.

66.     FormFactor admits that, on its face, the '133 patent issued on March 5, 2024. FormFactor admits that FormFactor was a named defendant in the Civil Action No. 23-842-JCG action for infringement of the '885 patent on March 5, 2024 and that action continue to be pending. FormFactor denies all remaining allegations of paragraph 66.

67.     FormFactor admits that on August 27, 2021, FormFactor cited WO2018108790 to the United States Patent Office when prosecuting FormFactor's U.S. Application No. 16/164,326 that ultimately was issued as U.S. Patent No. 11,460,485. FormFactor denies all remaining allegations of paragraph 67.

68.     FormFactor admits that David Raschko attended SWTest 2023. FormFactor denies all remaining allegations in paragraph 68.

69.     Denied.

70.     Denied.

71.     The allegations in paragraph 71 state a legal conclusion to which no response is required. To the extent a response is nonetheless deemed to be required, FormFactor denies all allegations in paragraph 71.

72.     Denied.

73.     Denied.

74.     Denied.

## DEMAND FOR JURY TRIAL

75.     The allegations in paragraph 75 state a request for a jury trial to which no response is required.

## PRAYER FOR RELIEF

The section of the Complaint titled "Prayer For Relief," including paragraphs (A) through (G) therein, sets forth a prayer for relief to which no response is required. To the extent a response is nonetheless deemed required, FormFactor denies that Technoprobe is entitled to any relief whatsoever, including the relief requested in the Complaint. Further, and to the extent that the Complaint's Prayer for Relief is deemed to include any factual allegations, FormFactor denies all such allegations.

A.     FormFactor denies that Technoprobe is entitled to the relief requested in this subparagraph.

B.     FormFactor denies that Technoprobe is entitled to the relief requested in this subparagraph.

C.     FormFactor denies that Technoprobe is entitled to the relief requested in this subparagraph.

D.     FormFactor denies that Technoprobe is entitled to the relief requested in this subparagraph.

E.     FormFactor denies that Technoprobe is entitled to the relief requested in this subparagraph.

F.     FormFactor denies that Technoprobe is entitled to the relief requested in this

subparagraph.

G.     FormFactor denies that Technoprobe is entitled to the relief requested in this

subparagraph.

## DEFENSES

FormFactor asserts the following defenses in response to the allegations in the Complaint

without waiver, limitation, or prejudice. FormFactor does not undertake any legal or factual burden

not otherwise assigned to it under the law, regardless of how such defenses are denominated or

described herein. FormFactor reserves the right to assert additional defenses as they become

known through further investigation and discovery.

### FIRST DEFENSE – FAILURE TO STATE A CLAIM

The Complaint fails to state a claim upon which relief can be granted against FormFactor.

As one non-limiting example, the Complaint fails to identify any cognizable theory of willful or

induced infringement of the '133 patent ("Asserted Patent"), as it fails to plead facts giving rise to

a reasonable inference that FormFactor had pre-suit or post-suit knowledge of the '133 patent

and/or committed any intentional or egregious act to support a claim for willful or induced

infringement.

### SECOND DEFENSE – NON-INFRINGEMENT

FormFactor does not infringe and has not infringed, either directly or indirectly, any valid

and enforceable claim of the '133 patent, either literally or under the doctrine of equivalents.

### THIRD DEFENSE – INVALIDITY AND UNENFORCEABILITY

The asserted claims of the '133 patent are invalid and/or unenforceable. For example, the

'133 patent fails to satisfy the conditions for patentability under the patent laws of the United

States, 35 U.S.C. §§ 101, 102, 103, 112, 116, and 256.

The asserted claims of the '133 patent are additionally unenforceable because, as explained in FormFactor's counterclaims, Technoprobe and its agents have committed inequitable conduct in securing allowance of the U.S. Patent No. 11,035,885 (the "'885 patent"), which is the parent of the '133 patent, at least by deliberately omitting material prior art during prosecution of the patent application that gave rise to the '885 patent.

### FOURTH DEFENSE – PROSECUTION HISTORY ESTOPPEL

Technoprobe's claims of patent infringement are barred by the doctrine of prosecution history estoppel to the extent Technoprobe's interpretations of the claims of the '133 patent extend beyond or are inconsistent with statements, amendments, or positions made during prosecution. Technoprobe is further estopped from construing one or more claims of the '133 patent to claim scope ceded during the prosecution of the '133 patent to, for example, avoid prior art.

### FIFTH DEFENSE – LIMITATION ON DAMAGES

Technoprobe's claims for damages and costs are statutorily limited, in whole or in part, by one or more of 35 U.S.C. §§ 286, 287, and 288, and 28 U.S.C. § 1498.

On information and belief, Technoprobe has failed to mark products that practice the '133 patent, as required by 35 U.S.C. § 287. Technoprobe therefore is barred from seeking relief for any alleged infringing act that occurred before Technoprobe provided FormFactor actual notice of its alleged infringement of the '133 patent, which first occurred upon service of the Complaint on FormFactor, and no damages are available for any alleged infringing act prior to that date.

To the extent any former assignee or any licensee of the '133 patent failed to mark products as required by 35 U.S.C. § 287, Technoprobe also is barred from seeking relief for any alleged infringing acts that occurred before service of the Complaint on FormFactor, and no damages are available for any alleged infringing act prior to that date.

Technoprobe is further precluded under 35 U.S.C. § 288 from recovering costs related to this action.

### SIXTH DEFENSE – NO WILLFUL INFRINGEMENT

FormFactor has not willfully infringed any claim of the '133 patent.

### SEVENTH DEFENSE – NO IRREPARABLE HARM

Technoprobe is not entitled to injunctive relief because any injury to Technoprobe is neither immediate nor irreparable and, in any event, Technoprobe would have adequate remedies at law.

### EIGHTH DEFENSE – WAIVER, EQUITABLE ESTOPPEL, UNCLEAN HANDS

By virtue of Technoprobe's negligent, willful, and other wrongful conduct, the equitable doctrines of waiver, equitable estoppel, and/or unclean hands bar Technoprobe from obtaining relief against FormFactor. Through its employees and agents, for example, Technoprobe has committed inequitable conduct in securing allowance of the '133 patent at least by deliberately omitting material prior art during prosecution of the patent application that gave rise to the patent. The claims of infringement are further barred by the doctrine of unclean hands because Technoprobe has continued to maintain those claims even after FormFactor showed Technoprobe that they are objectively baseless and that claim 1 of the '133 patent is invalid in light of the Kim reference discussed further below.

### NINTH DEFENSE – INEQUITABLE CONDUCT

As more fully explained in FormFactor's counterclaim below, which is incorporated herein by reference, the '133 patent is unenforceable because Technoprobe and its agents committed inequitable conduct during the prosecution of U.S. Patent App. 16/442,385 (published as US 2019/0302148 A1) (the "'385 Application"), thereby wrongly securing allowance of the resulting claims of the '885 patent, which is the parent of the '133 patent.

Specifically, during the prosecution of the '385 Application, Technoprobe and its agents, including at least Robert Iannucci, Justin Coe, and Roberto Crippa, failed to disclose, withheld, and/or concealed from the United States Patent and Trademark Office ("USPTO") with the specific intent to deceive, at least U.S. Pub. No. 2015/0198632A1 ("Kim"), which was non-cumulative and but-for material to the patentability of the '885 patent under prosecution.

## TENTH DEFENSE – LICENSE AND COVENANTS NOT TO SUE

Technoprobe's claims of infringement are barred, in whole or in part, by licenses and other contractual rights granted by Technoprobe by way of irrevocable license agreements and/or covenants not to sue.

## COUNTERCLAIMS

1.      Pursuant to Federal Rule of Civil Procedure 13, FormFactor Inc., ("FormFactor") asserts these counterclaims for declaratory judgment of non-infringement, invalidity, and unenforceability of one or more claims of U.S. Patent No. 11,921,133 (the "'133 patent") under the patent laws of the United States (Title 35, United States Code, Section 101 *et seq.*) and the Declaratory Judgment Act (Title 28, United States Code, Section 2201 *et seq.*).

## THE PARTIES

2.      FormFactor is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 7005 Southfront Road, Livermore, CA 94551.

3.      Technoprobe has alleged that it is an Italian corporation with its principal place of business at Via Cavalieri di Vittorio Veneto 2, 23870 Cernusco Lombardone (LC), Italy.

## JURISDICTION AND VENUE

4.      Subject to the affirmative defenses and denials set forth in FormFactor's answer to Technoprobe's Complaint, this Court has jurisdiction over the subject matter of FormFactor's declaratory judgment Counterclaims under, without limitation, 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202, based on the actual controversies between FormFactor and Technoprobe and further because they are so related to Technoprobe's claims against FormFactor that they form part of the same case or controversy.

5.      The declaratory judgment Counterclaims arise out of Technoprobe's assertion of the '133 patent against FormFactor.

6.      An actual and justiciable controversy relating to FormFactor's declaratory judgment Counterclaims exists between FormFactor and Technoprobe as to whether certain

FormFactor products infringe one or more claims of the '133 patent and whether those claims are invalid, and whether those claims are unenforceable due to inequitable conduct by Technoprobe.

7.      Technoprobe is subject to personal jurisdiction in this Court for all Counterclaims at least because Technoprobe has purposefully availed itself of this District by filing therein the Complaint in this matter.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b), at least because Technoprobe has consented to venue in this District by filing suit against FormFactor in this District.

## **COUNTERCLAIM COUNT 1**

### **Declaratory Judgement of Non-Infringement of U.S. Patent No. 11,921,133**

9.      FormFactor incorporates by reference the foregoing paragraphs as if fully set forth herein.

10.     Technoprobe has sued FormFactor alleging infringement of the '133 patent, including at least claim 1.

11.     Claim 1 of the '133 patent recites:

1.  A testing head configured to verify the operation of a device under test integrated on a semiconductor wafer, the testing head comprising:

    a plurality of contact elements, each including a body that extends between a first end portion and a second end portion, the plurality of contact elements being a buckling beam type; and

    at least one guide including a plurality of guide holes configured to receive the contact elements,

    wherein the at least one guide includes:

    a first conductive portion that includes and electrically connects a first group of guide holes, of the plurality of guide holes, to each other and is configured to contact first contact elements, of the plurality of contact elements, the first contact elements being configured to carry a first type of signal; and

a tip end;

a second conductive portion that includes and electrically connects the holes of a second group of the guide holes, of the plurality of guide holes, to each other and is configured to contact second contact elements, of the plurality of contact elements, the second contact elements being configured to carry a second type of signal that is different from the first type of signal,

wherein the first conductive portion and the second conductive portion are formed on a first face of the at least one guide and are physically and electrically separated from each other by at least one non-conductive zone.

12.     FormFactor is not infringing, and has not infringed, either literally or under the doctrine of equivalents, directly or indirectly, or in any way, any valid, enforceable claim of the '133 Patent, and therefore is not liable for infringement.

13.     FormFactor does not infringe making, using, selling, offering for sale, and/or importing any products accused of infringement by Technoprobe, either literally or under the doctrine of equivalents, at least because, based on FormFactor's understanding of Technoprobe's theory of infringement, Technoprobe has failed to show that any of the accused products meet limitations requiring a "first conductive portion that includes . . . a first group of guide holes," or a "second conductive portion that includes … a second group of guides holes."  Technoprobe's Complaint fails to describe or show how these claim elements allegedly are met by any FormFactor product.

14.     FormFactor is entitled to a declaratory judgment that none of the asserted claims of the '133 patent are infringed.

## COUNTERCLAIM COUNT 2

## Invalidity of U.S. Patent No. 11,921,133

15.     FormFactor incorporates by reference the foregoing paragraphs as if fully set forth herein.

16.     The claims of the '133 patent are invalid for failure to satisfy one or more of the requirements of Title 35, United States Code, including, but not limited to, Sections 101, 102, 103, or 112.

17.     The claims are anticipated and/or rendered obvious by the prior art, including at least U.S. Pub. No. 2015/0198632 A1 ("Kim").

18.     The claims are invalid under 35 U.S.C. § 112 because they lack written description, are not enabled, and/or are not sufficiently definite.

19.     FormFactor is entitled to a declaratory judgment that the claims of the '133 patent are invalid.

20.     An immediate, real, and justiciable controversy exists between FormFactor and Technoprobe regarding the validity of the '133 patent.

## COUNTERCLAIM COUNT 3

### Unenforceability of U.S. Patent No. 11,921,133

21.     FormFactor incorporates by reference the foregoing paragraphs as if fully set forth herein.

22.     Technoprobe has brought and maintained this action against FormFactor—which Technoprobe alleges is its largest competitor by market share—its second action asserting patents Technoprobe acknowledges are related, as part of a scheme to assert patents that Technoprobe knows are invalid and knows it procured by intentionally deceiving the U.S. Patent and Trademark Office, in a scheme to stifle fair competition, damage FormFactor's reputation and goodwill without basis, and impose the burden and expense of litigation on FormFactor.

23.     Technoprobe has alleged, and it appears from the priority claims on the face of the '133 patent, that the '133 patent claims priority to U.S. Patent No. 11,035,885 (the "'885

patent"). Specifically, U.S. Patent Application No. 18/329,475, which ultimately was allowed and issued as the '133 patent, was filed as a continuation of U.S. Patent Application No. 17/325,783, which in turn was filed as a continuation of U.S. Patent Application No. 16/442,385, which issued as the '885 patent.

24.     As set forth in more detail below, the '885 patent was issued only as a result of inequitable conduct committed by Technoprobe and its agents. This inequitable conduct renders unenforceable the '885 patent.

25.     At least according to the doctrine of infectious unenforceability, the inequitable conduct associated with the '885 patent also renders unenforceable the '133 patent. The inequitable conduct committed during the prosecution of the '885 patent bears an immediate and necessary relation to the enforcement of the '133 patent. Therefore, the '133 patent is unenforceable on account of Technoprobe's inequitable conduct.

***Technoprobe and its Agents Knew of U.S. Patent Application No. 14/596,762, published as Pub. No. US 2015/0198632A1 ("Kim") During Prosecution of the '885 Patent Application, But Failed to Disclose Kim to the USPTO with Deceptive Intent***

26.     The claims of the '885 patent are unenforceable against FormFactor at least on account of Technoprobe's inequitable conduct before the USPTO. As set forth more fully below, Technoprobe and its agents, with specific intent to deceive the USPTO, knew of and withheld from the USPTO material prior art that would have caused the USPTO to reject the patent application that ultimately led to the issuance of the '885 patent had the USPTO been made aware of the prior art at the relevant time.

27.     On June 14, 2019, Technoprobe filed U.S. patent application 16/442,385 ("the '385 Application") with the USPTO.

28.     The title of the patent application was "Testing Head Having Improved Frequency Properties."

29.     The '385 Application claimed priority to two Italian patent applications: app. no. 102016000127581 (filed Dec. 16, 2016) and app. no. 102017000021389 (filed Feb. 24, 2017). The '385 Application also claimed priority-in-part to PCT/EP2017/082180, filed on Dec. 11, 2017.

30.     The '385 Application ultimately issued as the '885 patent on June 15, 2021.

31.     Robert Iannucci and Justin Coe of SEED Intellectual Property Law Group LLP prosecuted the '385 Application on Technoprobe's behalf.

32.     On information and belief, Mr. Roberto Crippa was associated with the filing and/or prosecution of the '385 Application. Mr. Crippa is the Vice President of Technoprobe, according to the "Leadership" page on the company's website (https://www.technoprobe.com/people/innovation-makers/leadership) (last accessed July 22, 2024). As set forth in more detail below, Mr. Crippa was involved in Technoprobe's research and development and patenting efforts in the same or closely related field of technology as the '885 patent during the prosecution of the '385 Application.

33.     At all relevant times, the USPTO regulations have provided that "[e]ach individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [USPTO], which includes a duty to disclose to the [USPTO] all information known to that individual to be material to patentability," as defined under the regulations. 37 C.F.R. § 1.56(a).

34.     Therefore, at least Mr. Iannucci, Mr. Coe, and Mr. Crippa owed a duty to the USPTO to disclose material, non-cumulative prior art they were aware of during prosecution of the '385 Application.

35.     On August 23, 2019, Technoprobe filed another U.S. Patent application 16/550,089 (the "'089 Application") with the USPTO. The '089 Application also claimed priority to an Italian patent application dated February 24, 2017, application number, 102017000021400.

36.     Roberto Crippa was one of two named inventors of the '089 Application.

37.     Robert Iannucci and Justin Coe of SEED Intellectual Property Law Group LLP also prosecuted the '089 Application on Technoprobe's behalf.

38.     The title of the '089 Application was "Vertical Probe Testing Head With Improved Frequency Properties," the same as the title of the '385 Application with the addition of the words "Vertical Probe."

39.     The subject matters of the '385 Application and the '089 Application are related. For example, the Abstract of the '385 Application reads: "A testing head apt to verify the operation of a device under test integrated on a semiconductor wafer comprises a plurality of contact elements, each comprising a body that extends between a first end portion and a second end portion, and a guide provided with a plurality of guide holes apt to house the contact elements, the guide comprising a conductive portion that includes and electrically connects the holes of a group of guide holes to each other and is apt to contact a corresponding group of contact elements apt to carry a same type of signal."  Similarly, the Abstract of the '089 Application reads: "A testing head comprises at least one guide provided with a plurality of guide holes, and a plurality of contact elements housed in the plurality of guide holes. Suitably, the at least one guide comprises a plurality of conductive layers, each conductive layer: including holes of a corresponding plurality of group of the plurality of guide holes and electrically connecting a corresponding group of contact elements housed in the guide holes of the group, contact elements of a group being adapted to carry a same type of signal. The at least one guide is a multilayer comprising a

plurality of non-conductive layers, and the conductive layers are arranged on respective faces of a layer of the plurality of non-conductive layers."

40.     As described in their respective Abstracts, both the '385 Application and the '089 Application thus describe testing heads with a plurality of contact elements housed in guide holes, and a guide comprising a conductive portion that electrically connects a group of guide holes housing contact elements adapted to carry a same type of signal.

### *The Kim Reference Discloses Inventions Claimed in the '885 Patent*

41.     In its Original and First Amended Complaints filed in a lawsuit captioned *Technoprobe S.p.A. v. FormFactor, Inc.*, Civil Action No. 1:23-cv-0842-JCG in the District of Delaware, Technoprobe only identified claim 1 of the '885 patent as a specific claim it alleges that FormFactor infringes.

42.     U.S. Patent Application No. 14/596,762, which was published as US Pub. No. 2015/0198632A1 ("Kim" or the "Kim Reference") is prior art to the '885 patent. Kim was published on July 16, 2015. Even if the '885 patent is entitled to the earliest claimed priority date of the December 16, 2016 Italian application to which it claims priority, Kim is prior art under 35 U.S.C. § 102.

43.     Kim discloses all of the claim limitations recited in claim 1 of the '885 patent, and thus claim 1 of the '885 patent is invalid under 35 U.S.C. § 102 as anticipated by Kim.

44.     The preamble of claim 1 of the '885 patent reads, "A testing head configured to verify the operation of a device under test integrated on a semiconductor wafer, the testing head comprising:"

45.     Kim discloses the preamble of '885 patent, claim 1. For example, Kim discloses, "Provided is a semiconductor testing apparatus...." Kim, Abstract. Kim illustrates in Fig. 2 an exemplary semiconductor test device.



Kim, Fig. 2. The guide plate (10) with upper and lower plates (11 and 12) includes testing pins (30) housed in the guide holes (11b, 12b). Kim, [0051], [0062], Fig. 2. This structure mirrors the testing head (20) of the '885 patent. Kim explains that the semiconductor testing device could be implemented in a probe card. Kim, [0031]. Kim explains that such a probe card is used "for testing the electrical characteristic of the chip manufactured in the wafer level," matching the functional language in the preamble of claim 1. Kim, [0005], [0006].

46.     The next limitation of claim 1 of the '885 patent reads, "a plurality of contact elements, each comprising a body that extends between a first end portion and a second end portion."

47.     Kim discloses the next limitation of claim 1 of the '885 patent. For example, as shown in Fig. 2, Kim's testing pins (30) extend from the guide holes (11b) of the upper plate (11) through the receiving grooves (11a, 12a) to the guide holes (12b) of the lower plate (12). Kim, [0024]-[0028]. Kim describes the testing pins (30) throughout the disclosure of its embodiments in Figures 2-6. Kim, [0033]-[0034], [0038]-[0040], [0045]-[0047], [0050]-[0051], [0054]. Kim's testing pins (30) comprise a body extending between the end of the testing pins (30) making electrical contact with the Device Under Test (DUT) (the claimed "first end portion") and the end

of the testing pins (30) electrically contacting the space transformer of the probe head (the claimed "second end portion"). Kim, [0012]. This mirrors the disclosures of the '885 patent, with a "first end portion" that is the end of the contact elements at the contact tip (24) and a "second end portion" that is the end of the contact elements at the contact head (25). '885 patent at 7:13-15. The "body" of the contact elements connects the two end portions. *Id*. at 2:32-36. Like the '885 patent's "contact elements," Kim's "testing pins" are used to transmit signals (ground, power, and input/output) to the device under test.

48.     The next limitation of claim 1 of the '885 patent reads, "a plurality of contact elements, each comprising a body that extends between a first end portion and a second end portion."

49.     Kim discloses the next limitation of claim 1 of the '885 patent. Kim discloses that the guide comprises a conductive layer (20) and a conductive trace (40), which collectively constitute the claimed "first conductive portion" that "electrically connects a first group of guide holes" "to each other" and "is configured to contact corresponding first contact elements." "The conductive layer 20 is formed at one side of the upper plate 11" or lower plate 12. Kim, [0038]. Kim further teaches that the conductive layers (20) are formed on "an inner surface of the guide hole." Kim, [0017], Abstract, Fig. 2 (showing conductive layers 20 inside the guide holes).

50.     Additionally, "[t]he guide plate 10...provide[s] the forming area of the conductive trace 40." Kim, [0034]. This conductive trace (40) is formed using a conductive material on the inner or outer side of the upper plate (11) or lower plate (12). Kim, [0042], Fig. 2 (showing conductive trace 40 on the guide plate surface). "[O]ne side of the conductive trace 40 is connected to one side of the conductive layer 20 and the other side thereof is connected to one side of other conductive layer 20." Kim, [0043]. As a result, "one side thereof [the guide hole] is

electrically contacted with one side of the conductive layer 20 and it is connected electrically through the conductive layer 20 with the conductive trace 40," such that conductive layers 20 and conductive trace 40 electrically connect a group of guide holes. Kim, [0039]. And this "first conductive portion" is configured to electrically contact corresponding first contact elements: "[t]he testing pin 30 is electrically contacted with the conductive layer 20 and electrically connected to the conductive trace 40." Kim, [0039]. As such, "[t]he conductive layer 20 serves to electrically connect the testing pin 30 and the conductive trace 40 ... to each other." Kim, [0038], [0039]. In sum, "[a]ccording to the present invention, the testing pin is rendered to electrically connect to another testing pin ... through the conductive layer formed in the guide hole." Kim, [0063], Abstract, [0003], [0015].

51.      Kim also teaches that the "first contact elements" (the testing pins 30 that are electrically connected via the conductive layers 20 and conductive trace 40) are "configured to carry a first type of signal." For example, "the conductive layers 20, with which ***the testing pin of transmitting the same signal is contacted***, are connected to each other." Kim, [0044] (emphasis added). "For example, as shown in FIG. 3, the plurality of the conductive layers 20, with which the testing pin for ground is contacted, can be connected to each other. *Id*. Accordingly, two testing pins for ground, several tens of the testing pins for ground, or several thousands of the testing pin for ground can be connected to each other according to the connectivity pattern." *Id.* Fig. 3 (below, color-coding added) "is a conceptual diagram showing a state in that a conductive traces according to one embodiment of the present invention is connected between conductive layers, with which the testing pin of transmitting the same signal is contacted." Kim, [0025]. Figure 3 (color-coding added) illustrates that the conductive trace (40) connects between the

testing pins (30) transmitting the same type of ground signals and the conductive layers (20) in contact with the testing pins (30).



52.    Kim also includes Figures 5a and 5b, which are drawings showing the upper and lower surface of an upper guide plate according to one embodiment. Kim, [0027], [0028]. Kim illustrates in Fig. 5a that the testing pins (30) carrying ground signals (represented by "G" in the Figure) are electrically connected via the conductive layers (20) formed within a group of guide holes and the conductive trace (40) electrically connecting the conductive layers (20). Kim, Fig. 5a (color-coding added).



53.    "[T]he plurality of the conductive layers 20, with which the testing pins 30 of transmitting the same signal are contacted, and the conductive traces for connecting them are set to a plurality of groups and each group is formed at the upper surface and the lower surface of the upper plate 11 respectively, so that the testing pins 30 of transmitting the same signal in the

narrow testing area can be easily connected." Kim, [0050] (emphasis added); see also Kim, [0051] (on the upper surface, "the plurality of the conductive layers 20, with which the testing pins 30 for ground are contacted") (emphasis added). Kim discloses in several other places that testing pins transmitted the same type of signal (*e.g.*, ground) are electrically connected. Kim, [0019], [0032], [0062], [0064].

54.     The next limitation of claim 1 of the '885 patent reads, "a second conductive portion that incudes and electrically connects the holes of a second group of the guide holes to each other, the second group housing second contact elements of the plurality of contact elements, the second contact elements being configured to carry a second type of signal."

55.     Kim discloses the next limitation of claim 1 of the '885 patent, which mirrors the foregoing limitation for a "second" conductive portion, group of guide holes, contact elements, and type of signal. In addition to electrically connecting the group of testing pins (30) carrying ground signals through the conductive layers (20) and the conductive trace (40), Kim further teaches how to electrically connect another group of testing pins (30) carrying another type of signal, for example, power signals. For example, Kim describes and illustrates in Fig. 5b that testing pins (30) carrying power signals (represented by "P" in the Figure) are electrically connected via the conductive layers (20) and conductive trace (40). [Kim], [0051], Fig. 5b (color-coding added).



56.     Kim explains and illustrates in Figs. 2 and 5b that a plurality of guide holes (11b) are formed on the lower surface of the upper plate (11) of the guide plate (10) and a group of the guide holes is selected from the plurality of guide holes (11b) for housing a group of testing pins (30), for power signals. Kim, [0051]. And the group of testing pins (30) for power signals is electrically connected via the conductive layers (20) and the conductive trace (40). Kim, [0051]. As explained above, Figure 5b is the lower surface of the upper guide plate, as opposed to Figure 5a, the upper surface of that same guide plate. Kim, [0027], [0028]. Accordingly, Figures 5a and 5b show two *different* "conductive portions" (two different sets of conductive layers 20 and conductive traces 40) which, as described above, connect with two *different* sets of guide holes and contact elements.

57.     The Figure 3 conceptual diagram similarly shows, in addition to the electrical connection for ground testing pins discussed above, two other conductive traces connecting between testing pins (30) transmitting a second type of signal, power (the pins labelled "P1" and "P2"). Kim, Fig. 3 (color-coding added).



58.     The final limitation of claim 1 of the '885 patent reads, "the first and second types of signals chosen between ground signals and power signals.

59.     Kim discloses this final limitation of claim 1 of the '885 patent. As discussed above with respect to the two preceding limitations, Kim explicitly teaches two separate groups of testing pins (30) carrying ground and power signals, respectively, in contact with two separate groups of conductive layers (20) within two separate groups of guide holes (11b), respectively. And the two separate groups of testing pins (30) carrying ground and power signals are electrically connected by the conductive layers (20) and the conductive trace (40), respectively.

60.     In addition to claim 1, Kim also anticipates, or at minimum renders obvious, alone or in combination with other references, the other claims of the '885 patent.

***The prosecution history of the '385 Application confirms that Kim is material and non-cumulative***

61.     In the sole office action during prosecution of the '385 Application, original claims 1-3, 9-14, 16-18, and 22-25 of the '385 Application were rejected by the USPTO examiner as anticipated by reference "Kiyofuji."

62.     On February 4, 2021, Justin Coe prepared and filed with the USPTO Amendments to the claims of the '385 Application and filed a Reply to the examiner's non-final rejection of claims 1-3, 9-14, 16-18, and 22-25.

63.     On behalf of Technoprobe, Justin Coe amended independent claim 1 of the '385 Application to add the following limitations:

> A second conductive portion that includes and electrically connects the holes of a second group of the guide holes to each other, the second group housing second contact elements of the plurality of contact elements, the second contact elements being configured to carry a second type of signal, the first and second types of signals chosen between ground signals and power signals

64.     The USPTO thereafter allowed the '385 Application to issue as the '885 patent.

65.     As set forth above, the limitations added to claim 1 during prosecution of the '385 Application are disclosed in Kim.

66.     Kim is thus but-for material prior art to at least claim 1 of the '885 patent, and Kim also is not cumulative to any prior art considered by the USPTO during prosecution of the '385 Application.

*The European Patent Office's Rejection of the European Counterpart to the '385 Application in view of Kim, and Technoprobe's Response to that Rejection, Confirms that Kim is Material and Non-Cumulative Prior Art*

67.     On or around July 16, 2019, Technoprobe filed European application No. EP 3555638A1 (the "'638 Application") with the European Patent Office ("EPO"). The '638 Application is the counterpart to the application that gave rise to the '885 patent.

68.     The EPO rejected the then-pending claims of the '648 Application as lacking inventive step based on Korean Patent Publication No. 10-1421051 (the "'051 Reference") in an office action dated May 20, 2021. The '051 Reference has the same inventor and assignee as Kim.

69.     In response, Technoprobe distinguished pending application claim 1, as amended, because the "conductive layer" of the '051 Reference "connects to each other only ground probes, while the power probes are not connected to each other...." The limitations of '638 Application claim 1 as then-amended were similar in substance to those of '885 patent claim 1.

70.     On or around April 17, 2023, the EPO again issued an office action rejecting the pending claims, citing to Kim. The EPO observed that Kim disclosed relevant details on the grouping of probes (i.e., first group vs. second group of probes, including electrically connecting power contact elements in addition to ground) relative to the claimed guide plate. In view of Kim, the EPO determined that "[i]t appears therefore that the subject-matter of claim 1 is not new in view of [Kim]."

71.     In response, Technoprobe acknowledged that Kim "discloses the possibility of forming different conductive portions." Technoprobe has since attempted to distinguish Kim by amending claim 1 of the '638 Application to add new limitations not included in claim 1 of the '885 patent.

72.     On information and belief, the EPO has not yet responded to Technoprobe's amendments and the '638 Application remains pending.

73.     The EPO's rejection of a pending claim in the '638 Application that corresponds to claim 1 of the '885 patent, based on Kim, and Technoprobe's response acknowledging the relevant disclosures of Kim and attempting to overcome the rejection by adding more limitations, confirms that Kim is but-for material to at least claim 1 of the '885 patent and non-cumulative.

### *The Japanese Patent Office ("JPO")'s Rejection of the Japanese Counterpart to the '385 Application in view of Kim, and Technoprobe's Response to that Rejection, Again Confirms that Kim is Material and Non-Cumulative*

74.     On or around November 25, 2020, Technoprobe filed with the JPO a request for substantive examination of Japanese Patent Application No. 2019-531897 (the "'897 Application"). The '897 Application is the Japanese counterpart to the application that gave rise to the '885 patent.

75.     On or around October 6, 2021, the JPO rejected claims 1- 4, 11, 12, 15, 16, and 20 of the '897 Application as anticipated by Kim. The limitations in the rejected '897 Application Claim 2 were similar in substance to those of '885 patent Claim 1.

76.     In response, Technoprobe admitted that Kim discloses (1) "an upper plate and a lower plate with guide holes for accommodating test pins"; (2) a conductive part (conductive layer 20 in the guide hole and a conductive trace 40 formed on the surface of the guide) which covers multiple guide holes; (3) "[t]est pins within a group that transmit the same signal are electrically connected to each other by conductive parts"; and (4) "the test pins are disclosed to be for signal, ground, or power."

77.     Technoprobe also did not challenge the JPO's finding that Kim taught the additional limitations of application claims 3, 11, 12, 14, 15, 16, and 20. Rather, Technoprobe amended pending application claim 1 (the sole independent claim) to add further limitations in an effort to overcome Kim.

78.     The JPO's rejection of a pending claim in the '897 Application that corresponds to claim 1 of the '885 patent, based on Kim, and Technoprobe's response acknowledging the relevant disclosures of Kim and attempting to overcome the rejection by adding more limitations, confirms that Kim is but-for material to at least claim 1 of the '885 patent and non-cumulative.

### Technoprobe and its Agents, Including Robert Iannucci, Justin Coe, and Roberto Crippa, Avoided Disclosing the Kim Reference to the USPTO with Deceptive Intent so as to avoid having the claims of the '385 Application Rejected

79.     In a Notice of References Cited mailed to Seed Intellectual Property Law Group LLP on February 8, 2021 as part of prosecution of the '089 Application, the USPTO examiner responsible for the '089 Application identified Kim.

80.     Technoprobe and its agents, including at least Robert Iannucci, Justin Coe, and Roberto Crippa, thus had actual knowledge of Kim no later than on or about February 8, 2021.

81.     The '885 patent did not issue until June 15, 2021. Accordingly, Technoprobe and its agents, including at least Robert Iannucci, Justin Coe, and Roberto Crippa, were still subject to the duty of disclosure in connection with the '385 Application during the time they became aware of Kim.

82.     On information and belief, Technoprobe and its agents, including at least Robert Iannucci, Justin Coe, and Roberto Crippa, may have been aware of Kim earlier than on or about February 8, 2021. The USPTO examiner initiated an interview with Justin Coe regarding the '089 Application on February 1, 2021, and during that interview the USPTO examiner and Justin Coe discussed prior art, which may have included Kim. In addition, Technoprobe disclosed the '051 Reference to the USPTO in connection with the '385 Application's prosecution in an information disclosure statement dated June 14, 2019, which demonstrates that Technoprobe and its agents, including at least Robert Iannucci, Justin Coe, and Roberto Crippa, were aware of the prior inventions of Kim in this field and of the common assignee of Kim and the '051 Reference.

83.     Technoprobe and its agents, including at least Robert Iannucci, Justin Coe, and Roberto Crippa, despite having knowledge of Kim, did not disclose Kim to the USPTO during prosecution of the '385 Application.

84.     On information and belief, Technoprobe and its agents, including at least Robert Iannucci, Justin Coe, and Roberto Crippa, knew that Kim disclosed the limitations of at least the pending '385 Application claim that ultimately issued as '885 Patent claim 1.

85.     On information and belief, Technoprobe and its agents, including at least Robert Iannucci, Justin Coe, and Roberto Crippa, knew that Kim disclosed the limitations Technoprobe added to claim 1 of the '385 Application by way of amendment on February 4, 2021 to overcome the pending prior art rejection.

86.     On information and belief, Technoprobe and its agents, including at least Justin Coe, Roberto Crippa, and Robert Iannucci knew that if they had disclosed Kim to the patent examiner, the examiner would not have allowed the amended claims of the '385 Application to issue.

87.     Technoprobe's actions in filing and maintaining the lawsuit captioned *Technoprobe S.p.A. v. FormFactor, Inc.*, Civil Action No. 1:23-cv-0842-JCG in the District of Delaware, the instant lawsuit against FormFactor, its alleged biggest competitor, where clear evidence known to Technoprobe confirms that the asserted patent is invalid, demonstrates the motivation of Technoprobe and its agents to intentionally deceive the USPTO by withholding Kim during prosecution of the '885 patent: obtain and misuse an invalid patent in attempt to wield an unfair advantage over its competitor FormFactor.

88.     On information and belief, Roberto Crippa, as Vice President of the Board of Directors, a member of the family that founded Technoprobe, and someone who has repeatedly presented himself publicly as a person involved in Technoprobe's strategic and competitive vision, is motivated to ensure Technoprobe acquires patents that could be used against FormFactor to try to damage FormFactor's position in the market.

89.     On information and belief, Technoprobe and its agents, including at least Justin Coe, Roberto Crippa, and Robert Iannucci, withheld Kim from the USPTO during prosecution of the '385 Application with intent to deceive.

90.     Technoprobe's subsequent arguments and concessions to the EPO and JPO in response to the rejections based on Kim, as described above, are further evidence that Technoprobe and its agents, including at least Justin Coe, Roberto Crippa, and Robert Iannucci,

did not withhold Kim from the USPTO as a result of any honest mistake but rather did so with specific intent to deceive the USPTO into granting the invalid claims of the '885 patent.

91.    Technoprobe's citation of the '051 Reference to the USPTO during prosecution of the '385 Application, but its failure to cite Kim, is further evidence that Technoprobe and its agents, including at least Justin Coe, Roberto Crippa, and Robert Iannucci, did not withhold Kim from the USPTO as a result of any honest mistake but rather did so with specific intent to deceive the USPTO into granting the invalid claims of the '885 patent.

### The Immediate and Necessary Relation Between the Inequitable Conduct Committed in Prosecuting the '885 Patent and the '133 Patent

92.    On May 20, 2021, Technoprobe filed U.S. patent application 17/325,783 ("the '783 Application") as continuation of the '385 Application with the USPTO.

93.    The title of the patent application was "Testing Head Having Improved Frequency Properties," which is exactly the same as the title of the '385 Application.

94.    The '783 Application claimed priority to the same two Italian patent applications: app. no. 102016000127581 (filed Dec. 16, 2016) and app. no. 102017000021389 (filed Feb. 24, 2017). The '783 Application also claimed priority-in-part to PCT/EP2017/082180, filed on Dec. 11, 2017.

95.    On September 29, 2022, the Examiner rejected the pending claims 1-25 of the '783 Application on the ground of non-statutory double patenting as unpatentable over claims 1-23 of the '885 patent in view of Kiyofuji et al.

96.    On December 28, 2022, Technoprobe filed a terminal disclaimer with the USPTO disclaiming that "the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of prior patent number(s) 11035885 as the term of said prior patent is presently shortened by any

terminal disclaimer." Technoprobe also filed remarks stating that "[a] terminal disclaimer relative to US Patent No. 11,035,885 is electronically submitted herewith to obviate this basis of rejection." Technoprobe concludes in the remarks that "[a]ccordingly, withdrawal of the double-patenting rejection is respectfully requested."

97. The '783 Application ultimately issued as US Pat No. 11,808,788 (the "'788 patent") on November 7, 2023.

98. On June 5, 2023, Technoprobe filed U.S. patent application 18/329,475 ("the '475 Application") as continuation of the '783 Application with the USPTO.

99. The title of the patent application was "Testing Head Having Improved Frequency Properties," which is exactly the same as the title of the '385 Application and the '783 Application.

100. The '475 Application claimed priority to the same two Italian patent applications: app. no. 102016000127581 (filed Dec. 16, 2016) and app. no. 102017000021389 (filed Feb. 24, 2017). The '475 Application also claimed priority-in-part to PCT/EP2017/082180, filed on Dec. 11, 2017.

101. On October 13, 2023, the Examiner rejected the pending claims 1, 5-7, 9-12, 19-20, 22, 23 and 27-28 of the '475 Application on the ground of non-statutory double patenting as unpatentable over claims 1, 3-6, 8-9, 11, 17 and 20 of the ''783 Application in view of Ding et al. (US2014/0062519 A1).

102. On December 4, 2023, Technoprobe filed a terminal disclaimer with the USPTO disclaiming that "the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of prior patent number(s) 11808788 as the term of said prior patent is presently shortened by any

terminal disclaimer." Technoprobe also filed remarks stating that "[a] terminal disclaimer relative to US Patent No. 11,808,788 (US Patent Application No. 17/325,783) is submitted." Technoprobe concludes in the remarks that "[a]ccordingly, withdrawal of the double-patenting rejection is respectfully requested."

103.    The '475 Application ultimately issued as the '133 patent on March 5, 2024.

104.    Hayley J. Talbert of SEED Intellectual Property Law Group LLP prosecuted the 783 Application and the '475 Application on Technoprobe's behalf.

105.    As discussed above, Technoprobe and its agents breached the duty to prosecute the '385 Application in good faith and candor by avoiding disclosing the Kim Reference to the USPTO with deceptive intent so as to avoid having the claims of the '385 Application rejected.

106.    There is an immediate and necessary relationship between Technoprobe's inequitable conduct committed during prosecution of the '885 patent and the '133 patent because Technoprobe filed a terminal disclaimer in '475 Application to surmount a double-patenting rejection over the earlier '788 patent, and in turn Technoprobe filed a terminal disclaimer during prosecution of the '788 patent to surmount a double-patenting rejection over the earlier '885 patent. In addition, the '133 patent issued from a continuation of the '783 Application, which in turn was a continuation of the '385 Application.

107.    The subject matter claimed in the '133 patent and the '885 patent cover similar "testing head[s] configured to verify the operation of a device under test integrated on a semiconductor wafer." Technoprobe cannot avoid the results of its inequitable conduct as to the '885 Patent, which renders all claims in that patent unenforceable, simply because Technoprobe filed claims in a series of continuation applications rather than in one application.

## PRAYER FOR RELIEF

Wherefore, FormFactor respectfully requests the following relief:

A.    That this Court enter judgment in favor of FormFactor, and against Technoprobe, dismissing Count I of Technoprobe's Complaint with prejudice, with Technoprobe taking nothing by way of that claim;

B.    That this Court enter judgment that FormFactor has not infringed, and is not now infringing, any valid claim of the '133 Patent under any subsection of 35 U.S.C. § 271;

C.    That this Court enter judgment that all asserted claims of the '133 Patent are invalid;

D.    That this Court enter judgment that this Court find in favor of FormFactor that this case stands out from others and as such is an exceptional case pursuant to 35 U.S.C. § 285 such that FormFactor shall be entitled to reasonable attorneys' fees;

E.    That this Court enter judgment that the claims of the '133 Patent are unenforceable due to inequitable conduct;

F.    An award to FormFactor of the costs of this action and its reasonable attorneys' fees and expenses;

G.    An award to FormFactor of such other and further relief as this court deems just and proper.

## DEMAND FOR JURY TRIAL

FormFactor hereby demands a trial by jury on all issues for which a jury trial may be had.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____

*Of Counsel:*

John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

T. Vann Pearce, Jr.
Steven J. Routh
Jasmine W. Zhu
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue
Washington, D.C. 20037
(202) 339-8400
vpearce@orrick.com
srouth@orrick.com
jzhu@orrick.com

*Attorneys for Defendant FormFactor, Inc.*

Sheryl K. Garko
Caroline Simons
Ryan Lind
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA 02116
(617) 880-1800
sgarko@orrick.com
csimons@orrick.com
rlind@orrick.com

Anri Nakamoto
ORRICK, HERRINGTON & SUTCLIFFE LLP
Izumi Garden Tower, 28th Floor
6-1 Roppongi 1-Chome
Minato-ku, Tokyo, 106-6028
Japan
81 3 3224 2089
anakamoto@orrick.com

Dated:  July 24, 2024